## VAN METER v. COMMISSIONER OF INTERNAL REVENUE.

### INGLEMAN v. SAME.
### Nos. 9376, 9377.

Circuit Court of Appeals, Eighth Circuit.
Nov. 18, 1932.

James C. Davis and Guy A. Miller, both of Des Moines, Iowa, for petitioners.

John MacC. Hudson, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, Sp. Asst. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Nathan Gammon, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

The Hawkeye Life Insurance Company was organized March 9, 1920, and commenced business on the following July 1st. The Van Meter Company was organized April 29, 1920, by five persons, one of whom was this petitioner Van Meter. On June 15, 1920, and subsequently on January 21, 1924, the Hawkeye and Van Meter Companies entered into contracts whereby the latter was appointed the general agent for the former, and provided, among other things, that renewal commissions were to be paid the Van Meter Company "or its assigns" by the Hawkeye Company. At various meetings of the stockholders of the Van Meter Company, that company assigned the renewal commissions on business written under the general agency contracts to various persons, among whom was the taxpayer in this case. The Van Meter Company was dissolved on August 31, 1925. During the years 1922, 1923, 1924, and 1925, the Hawkeye Company paid direct, by individual check, to the various assignees of the Van Meter Company all of the renewal commissions arising under the two general agency contracts, and no part of the renewal commissions was paid to the Van Meter Company. During the years in controversy, the assignees paid an income tax upon the sums so received by them.

The present taxes are sought as taxes of the Van Meter Company for the years 1922 to August 31, 1925, and the claimed liability of this petitioner is as a transferee under section 280 of the Revenue Act of 1926 (44 Stat. 61 [26 USCA § 1069 and note]). While petitioner argues that the Van Meter Company was a personal service corporation, we do not deem it necessary to examine that matter except to say this taxable period begins with the year 1922 and personal service corporations were subject to taxation after December 31, 1921. Revenue Act of 1921, § 218 (d), 42 Stat. 245. The decisive question presented here is whether these assignments of renewals prevented such renewals from being income of that company, in a taxable sense, for the years in which they were paid by the insurance company to the assignees.

There is no question that these renewal premiums constitute taxable income. There is no question that the Van Meter Company and it alone earned this income. There is no question that the company made assignments of this income to petitioner with authority, accepted and acted upon by the insurance company, for direct payment to petitioner, and that this income was never received nor enjoyed by the Van Meter Company. If the Van Meter Company is taxable for this income, it must be because Congress has the power to tax income to the earner, irrespective of whether he or someone else actually receives and enjoys it, and because Congress has exercised this power.

The Supreme Court has definitely determined that Congress has the power to tax the *earner* of income therefor, irrespective of whether it is paid to someone else. Burnet v. Leininger, 285 U. S. 136, 142, 52 S. Ct. 345, 76 L. Ed. 665; Lucas v. Earl, 281 U. S. 111, 114, 50 S. Ct. 241, 74 L. Ed. 731; Corliss v. Bowers, 281 U. S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916; Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918. Our only question is, therefore, has Congress manifested such an intention in the statutes here applicable.

The "earner" of income is one whose personal efforts have produced it; who owns property which produced it or a combination of the two. Decisions of the Supreme Court have declared that the income statutes require taxation to the earner in each of the three above sources of income where the income was actually realized but never came to beneficial enjoyment by the earner. Lucas v. Earl, 281 U. S. 111, 50 S. Ct. 241, 74 L. Ed. 731, is the decision in the instance of income earned by personal efforts alone—the income there being fees and salary of an attorney. Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, is the instance of income from owned property. Burnet v. Leininger, 285 U. S. 136, 52 S. Ct. 345, 76 L. Ed. 665, is the instance of combined personal effort and property (or capital). These decisions were made upon the sections

of the statutes defining taxable income here involved (sections 210, 213, and 233 of Revenue Act of 1921 [42 Stat. 233, 237, 254], and sections 210, 213, and 233, Revenue Acts 1924 and 1926 [26 USCA § 951 note; § 954 and note; § 985]), or upon sections of other federal income statutes having precisely the same meaning in this respect. All of these decisions are governing authority in this case —the Lucas Case being more exactly so only because that and this case both deal with income earned through personal effort (in the Lucas Case by Earl, and here by the agents of the Van Meter Company).

In determining who is taxable for an income, there are three considerations which *may* be of importance, to wit, who earns the income, who receives it, and who enjoys it. Where the same person earns, receives, and enjoys the income (the normal and usual situation), there is no difficulty. Where different persons earn, receive and/or enjoy the income, disputes occur. In determining such disputes, the vital matter is always the relation of the earner (whether a person, owner of property or combination of the two) of the income to the income so earned. The rule and intent of the taxing statutes is that the earner of income which he might and, normally, would receive and enjoy for himself is not relieved because he chooses not to receive or not to enjoy it, and this is not necessarily changed by such deprivation taking the form of an obligation legally binding him thereto. If there exists a legal relationship of the earner to others which results in the earnings (in part or whole) being for the benefit of others than the actual earner, the statutes do not attempt to tax the earner for such income as he was not earning in his own right,[1] but where the earner of the income does nothing more than transfer the income earned in his own right to another, even though such disposal be in advance of the earning thereof (Burnet v. Leininger and Lucas v. Earl, supra), or where he retains any power of control over the income earning property or the income therefrom (Corliss v. Bowers, 281 U. S. 376, 50 S. Ct. 336, 74 L. Ed. 916, and analogous as to transfer tax Chase Nat. Bank v. U. S., 278 U. S. 327, 49 S. Ct. 126, 73 L. Ed. 405, 63 A. L. R. 388; Reinecke v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 73 L. Ed. 410, 66 A. L. R. 397, and as to State suc-

cession tax Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565), such income is taxable to him within the intent of the statute (Burnet v. Leininger, Lucas v. Earl and Corliss v. Bowers, supra).

It is argued that it was the intention of the incorporators of the Van Meter Company from the first that "the Van Meter Company was contemplated only as a vehicle, as an intermediary by which to conduct the sale of life insurance for the Hawkeye Life Insurance Company, and the contract for selling life insurance for the Hawkeye was made between the Van Meter Company and the Hawkeye; the commissions and renewal commissions were contemplated as being paid direct from the Hawkeye Life to the individuals, without using the Van Meter Company as an intermediary" (testimony of McBride). This may be taken as true, but the fact remains that the Van Meter Company was the actual earner of these renewals under its contracts with the insurance company and was not a mere agency of the incorporators. A corporation is, in its very nature, an entity operating for the benefit of its stockholders. To permit it to be treated as the mere agent of the stockholders in a taxation sense would be to violate all legal conceptions of the true relationship and would open the door to unlimited escape from taxation.

It is argued that these assignments were effective as passing title to the renewals as choses in action. It may be conceded that the assignments legally entitled the assignees to have the renewals. That is not determinative here. There was no assignment of the agency contract. The Van Meter Company alone acted thereunder, and it alone produced the insurance business which was the basis or earning of the renewals. The actual effect of the assignments was to transfer to the assignees what had been solely earned by the Van Meter Company and to authorize direct payment thereof to the assignees by the Hawkeye Company. What it did with its earnings cannot affect the application of the taxing statutes. The Burnet v. Leininger and Lucas v. Earl Cases, supra, did not turn on any failure of the contracts there involved to pass the taxed income from the earner, but in both cases those contracts were treated as fully effective for that purpose and yet were held not to affect the application of the taxing statutes.

Petitioner strongly urges several Circuit and District cases as sustaining his position. Only one of them opposes what has been said above. The latest of these is Nelson v. Fer-

[1] Instances are where an employee earns money through his efforts for his employer (such as sales agents); where a partner earns for a partnership (Burnet v. Leininger, 285 U. S. 136, 141, 52 S. Ct. 345, 76 L. Ed. 665); or a husband for a community estate (Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239).

guson, 56 F.(2d) 121 (C. C. A. 3). This is a case where the income consisted of profits from a contract. The petitioner assigned these profits yet to be earned to his wife in a crudely·drawn instrument which the court treated as an assignment or transfer of his rights under the contract. There the source or "earner" of the income was assigned so that the wife became owner thereof. That is essentially different from this case, where the earnings only were assigned.

Another of these is Hall v. Burnet, 60 App. D. C. 332, 54 F.(2d) 443, Court of Appeals of District of Columbia. We think this case is an authority for petitioner. However, and with all due respect, we think the distinction of the Lucas v. Earl Case, attempted in the opinion, is unsound. It may·be true that income already entirely earned is transferable as a species of property, but that has no effect upon the power and intention of Congress to tax income to the earner. The earner may, in a legally binding way, dispose of his earnings, whether they are already earned or are to be earned, without affecting in the slightest manner his status as earner thereof and his resulting liability for taxation thereon as income. Such is the rule of the Lucas, Corliss and Leininger Cases, to which·the Hall Case is, in our judgment, opposed.

Another of these cases is Central Life Assur. Soc. Mut. v. Commissioner, 51 F.(2d) 939, in this court. There an insurance company, which had written both participating and nonparticipating policies, sold its business to another company under a contract providing that earnings collected by the purchaser on the nonparticipating policies already existing should be paid over to certain designated persons. There, the purchaser had not earned any of these earnings and, under this contract, never received any beneficial right or title to them. The purchaser was a mere collector or conduit through which they passed.

The next case is Bettendorf v. Commissioner, 49 F.(2d) 173, this court. That case involved income (dividends) from corporate stock where the owner had transferred only legal title to the stock under a contract requiring collection and payment by the transferee to her of all dividends during her life. At the time the stock earned the dividends involved in that controversy, the petitioner there held only a bare legal title to the stock with power to collect and transmit the earnings. This court held the transferee to be a "trustee, a fiduciary" [page 175 of 49 F. (2d)], "the innocent agency·by or·through whom a substantial income was derived for some one else" [page 176 of 49 F.(2d)].

Another is Iowa Bridge Co. v. Commissioner, 39 F.(2d) 777, this court. There a corporation which had partially constructed bridges under contracts, sold and assigned its rights in such contracts for the cash investment it had made therein up to the assignment and for the obligation of the assignee to complete the contracts. The tax sought to be levied against the corporation was upon the profits realized by the assignee from completion of the contracts. The Commissioner conceded that if the assignment was valid the corporation was not taxable for these profits. Page 780 of 39 F.(2d). There the earner of the profits was the assignee who acted under the assigned contracts.

Another case is Shellabarger v. Commissioner, 38 F.(2d) 566 (C. C. A. 7). There, a beneficiary of the income from two trust funds contracted to pay a certain part thereof to another. In determining that the part transferred was not taxable income of the beneficiary, the court thought the reason for not requiring payment direct of the part transferred was a requirement in the trust deed that income from the trust was "payable to her [the beneficiary] on her sole and separate receipt therefor" and that she was "but an instrumentality or agency for receiving and conveying" the part transferred. In so far as the petitioner was concerned, the interest owned by her and producing her income was the right to receive the income designated in the trust instrument. The opinion does not directly discuss whether the conveyance by her was of a fraction of this "interest" or only of a part of the income produced thereby, but it is clear the court regarded the conveyance to be of the interest as well as of the income therefrom. The court says: "It [the doubtful authority of the trustees to make payment to any one than petitioner] tends to dispel any inference that, under the terms of the contract, any power or control over the three-tenths and the one-fifth remained in Maud·except to receive it and turn it over as in the contract specified" [page 567 of 38 F.(2d)] and "She did all she reasonably could to invest Georgia and the bank with full right and title to the half." Page 567 of 38 F.(2d).

U. S. v. Looney, 29 F.(2d)· 884, 885 (C. C. A. 5), involved the question of whether an oil royalty was taxable to the landowner or his transferee of the royalty. The court held that: "The right to receive a part or share of the oil extracted from the land mentioned was an interest in the land. ✱ ✱ ✱ That

right, as to the whole or a part of the subject of it, may be sold or otherwise disposed of by its owner," and that the transfer passed ownership of the royalty as an interest in the land. The distinction made is that, although a royalty is income to the landowner, it is also an interest in the land and, as the latter, may be completely transferred even for income purposes.

Young v. Gnichtel, 28 F.(2d) 789, New Jersey District Court, is cited but not discussed. Here a beneficiary under a trust assigned a portion of the income therefrom with power in the transferee to collect direct from the trustee. Unless this case is like the Shellabarger Case, it is questionable authority.

O'Malley-Keyes v. Eaton, 24 F.(2d) 436 (Conn. D. C.), is like the Young Case. Of four cases cited from the Board of Tax Appeals, three are discussed. That of Paulson v. Commissioner, 10 B. T. A. 732, is like the Looney Case. The others, Blaney v. Commissioner, 13 B. T. A. 1315, and Grace Scripps Clark v. Commissioner, 16 B. T. A. 453, are like the Young and O'Malley-Keyes Cases.

Petitioner argues two matters which may be treated together. The first is that the assignment of these renewals was by way of "remuneration for time expended and money expended by the stockholders in the service of the corporation." The other is that they were partial distributions of the corporate assets. In either event, the renewals must be regarded as assets of the corporation in order to pass from it either as remuneration or in distribution. How they could be assets or property of the corporation, and their character as income of the corporation avoided, is not quite clear to us. But whatever the reason for the assignments, or however we name the legal effect thereof, the stark fact remains undisturbed and decisive that the corporation alone earned the renewals in its own right. To that fact, the statutes attach the liability to pay an income tax upon such as are actually realized.

We think the Board right in its determination, and the petition is, therefore, dismissed.

In case No. 9377, A. R. Ingleman, Petitioner, v. Commissioner of Internal Revenue, Respondent, the stipulation having been filed that the result in case No. 9376, B. D. Van Meter, Petitioner, v. Commissioner of Internal Revenue, Respondent, should govern in the Ingleman Case, an order will be entered dismissing the petition therein.