### REDFORD v. UNITED STATES.
Civ. No. 1498.

United States District Court
E. D. Tennessee, S. D.
Sept. 14, 1951.

Taber, Chambliss, Swafford & Claunch, Chattanooga, Tenn., for plaintiff.

O. T. Ault, U. S. Atty., Chattanooga, Tenn., for defendant.

DARR, Chief Judge.

The plaintiff sues the United States to recover $6,974.59 plus interest paid by him as income taxes for the years 1944 and 1945, by virtue of an alleged erroneous assessment by the Commissioner.

The plaintiff and his wife, Pearl V. Redford, claiming to be two equal partners in the firm of Redford Stores Company, filed returns as partners for 1944 and 1945, and paid the proper income tax based upon such returns.

On May 8, 1949, the Commissioner of Internal Revenue recomputed the taxes for the plaintiff and his wife, denied them the status of partners for tax purposes and assessed an additional amount against the plaintiff, which is the amount sought to be recovered herein.

In recomputing the taxes, the Commissioner reduced the taxable income of plaintiff's wife, Pearl V. Redford, from the partnership income which she claimed, to a salary of $3,000 for 1944 and $3,600 for 1945.

It is agreed that if the plaintiff and Pearl V. Redford were taxable as partners, their returns for the years 1944 and 1945 are correct; that the taxes paid by them on that basis were correctly computed and punctually paid; that the amount of plaintiff's claim is correct if the recomputation and assessment were erroneously made, and that plaintiff has complied with all requisite formalities for the maintenance of this suit.

The sole question involved, therefore, is whether the plaintiff and his wife, Pearl V. Redford, were partners for income tax purposes for the years 1944 and 1945. If so, the assessment was erroneously made and the plaintiff may recover.

It is undisputed that, in February 1943, effective as of January 1, 1943, the plaintiff, his wife, Mrs. Pearl V. Redford, Sam F. Phillips and his wife, Ethel R. Phillips, entered into a written partnership agreement, which remained effective during the years 1944 and 1945; and it is conceded that this contract had the effect of creating a legal partnership, under which the plaintiff and Pearl V. Redford became subject to all the benefits and obligations resulting in law from a general partnership. The dollar capital interests of the respective partners were set out, the interest of plaintiff and Mrs. Redford being designated as $8,042.56 each.

It is understood that the recomputation of income and the resultant assessment against the plaintiff, as made by the Commissioner, was based upon his conclusion that Mrs. Pearl V. Redford did not contribute any part of the original capital of the business, and that her activities with the business were not managerial but only as an employee. The Commissioner's conclusion was also apparently influenced in part by the fact that certain leases for the stores, and that the books maintained by the business, indicated that the plaintiff, rather than a partnership, was the proprietor and owner; or in any event, that Mrs. Pearl V. Redford was not a partner.

Particular stress is laid on the fact that leases for the business were in the name of William A. Redford, the plaintiff; that funds presumed to represent the partnership income of Mrs. Pearl V. Redford were withdrawn on checks in favor of William A. Redford; and the licenses issued for privilege taxes by the City of Chattanooga to the Company and the reports made by the Company to Dun & Bradstreet's Agency did not disclose that Pearl V. Redford was a partner. It appeared, however, that after the written partnership agreement was executed as of January 1, 1943, reports made to Dun & Bradstreet did show her as a partner, including reports for 1944 and 1945.

In support of the plaintiff's position, it is shown that plaintiff and his wife, Pearl V. Redford, started the business of Redford

Stores Company in 1936. Plaintiff had for many years prior thereto been an employee of S. H. Kress & Company, which conducted a similar business, and, commencing in 1915 in a comparatively unimportant position, was promoted to the office of manager, and was subsequently manager of a number of stores.

He remained with the S. H. Kress & Company until 1935, except the time he served as a soldier in World War I.

Plaintiff and his wife were married in 1918, at which time she was a school teacher. At the time of their marriage she had saved some $500 or $600, which was placed in a joint account of the husband and wife.

In 1935 Mr. Redford became associated with Routh Stores, Inc., which operated a five-and-ten-cent store in Georgia. Plaintiff opened a store for that Company on Main Street in Chattanooga and soon also another store on Brainerd Road in Chattanooga. Plaintiff's stock in that corporation was taken in his name, but paid for by funds carried in a joint bank account upon which both plaintiff and his wife were fully authorized to make withdrawals.

During this period Mrs. Redford became active in the business, keeping the books for the Main Street and Brainerd Road stores; and participated actively in the decision to open the Brainerd store and in its management after it was opened.

In 1936, plaintiff terminated his interest in the Routh Corporation, surrendered his stock therein, and received for his stock the stores on Main Street and Brainerd Road. It was then that the business became known as "Redford Stores Company". The assets of that Company were negligible, and consisted largely of the small accumulated earnings of both husband and wife.

From that time to the present, Mrs. Redford was active in the business, both as supervisor of the books and in the management. She was consulted and her opinions considered in substantially all managerial problems, including the opening of another store on Frazier Avenue, Chattanooga. She was in active charge of the Brainerd store.

She affirmatively participated in the organization of Redford Stores, Inc., a corporation which was organized to operate additional stores in other towns, and also to maintain a servicing warehouse for Redford Stores Company. The warehousing business was, in January 1943, taken over by the Redford Stores Company from Redford Stores, Inc., and Mrs. Redford was thereafter active in the warehousing operation.

Several stores out of Chattanooga were established by the Redford interests. Some of which, at least, were so established upon survey and recommendation by Mrs. Redford.

In 1936, a third partner, Sam F. Phillips, was taken in; and the decision to sell the interest to him was largely due to the attitude of Mrs. Redford, who favored it.

Mrs. Redford continuously gathered the receipts from all the stores and made deposits in the bank. She was authorized to and did sign checks on the bank account; and also signed partnership notes at the bank for borrowed money. The bank knew of, and recognized, her status as a partner in the business, prior to 1944 as well as thereafter. During all the years from 1936 to 1944, both before and after the execution of the formal written partnership agreement in February 1943, the plaintiff and Mrs. Redford maintained all their income in a joint account from which either could make withdrawals. They considered that they were equal partners in their business, but did not consider it necessary to maintain separate accounts or to legally establish their rights by formal contract.

When a new partner was taken in in 1936, he was given a one-third interest; thus recognizing Mr. and Mrs. Redford as continuing their equal interests of one-third each. The new partner, Mr. Phillips, understood that Mrs. Redford was an equal partner.

The books of the partnership were informally maintained and did not allocate any particular portion of the capital assets prior to 1943 as belonging to Mrs. Redford. These books were not set up so as to con-

form to normal bookkeeping methods, and Mr. and Mrs. Redford operated for a number of years without an attorney for legal guidance. They were thus not aware of the importance and propriety of legal exactness in preserving proper records to show their separate status. As Mr. Redford was the one who generally transacted the business with the public, it was not unnatural that leases and privilege taxes should have been held in his name alone. And it is evident that, by such transactions, they did not intend to correctly reflect the true ownership of the business. They were not advised, and did not realize, that it was important to show the capital funds of Mrs. Redford and her distribution of partnership profits as separate accounts.

Prior to 1944 their returns for income taxes were jointly made; and they changed to a partnership basis on the suggestion of a certified public accountant, who observed from an examination of the books, records and operations, that Mr. and Mrs. Redford were in fact partners, and that they were entitled to that status under the internal revenue laws.

The assets of the partnership business was largely an accumulation of profits. Little original capital was invested in 1936 when it was established. Mr. Redford was without any substantial funds of his own for investment; and in their first commercial venture Mrs. Redford's savings had been used.

The Court is convinced that Mr. and Mrs. Redford intended to, and did in fact, operate the business as partners from 1936. Mrs. Redford testified as a witness in the case, and the Court was impressed by her familiarity with the business and with her managerial activities in its operation.

Obviously Mrs. Redford is a person of splendid ability, a strong personality and with ample energy. Beyond doubt, her activities were a vital factor in the success of the Redford Stores Company and allied interests.

The Court is convinced that she had a distinct and separable interest as a partner in the assets when in February 1943, the formal partnership was reduced to a written agreement. That agreement was made without reference to income tax purposes, and in order to define the rights of succession and disposal of the respective partnership interests. Income tax return for 1943 was, as formerly, made jointly by Mr. and Mrs. Redford.

The Court thus concludes that the partnership between the plaintiff and Mrs. Pearl V. Redford existed from the beginning of their operation as Redford Stores Company in 1936; that the interest of Mrs. Redford in the capital funds as written into the agreement of February 1943 was a bona fide interest belonging to her; that she had throughout the partnership acted continuously in a managerial capacity in building up the business; and that the written agreement of February 1943, in so far as the interest of the partners were concerned, did no more than establish the interests as they previously existed.

No reason therefore appears why the plaintiff and Mrs. Pearl V. Redford should not have made partnership returns for income taxes for 1944 and 1945.

■ As held in Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 241, 74 L.Ed. 731, one of the important principles in determining liability for income tax in such partnership cases is "who earns the income?" Cf. also, Helvering, Commissioner of Internal Revenue v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75.

In the present case, there can be no doubt that Mrs. Pearl V. Redford did her full part in earning the partnership income. The Commissioner himself was impressed by her services, as he allowed her salary of $3000 for 1944, and $3600 for 1945. He erroneously concluded that she was a mere employee.

■ There is no indication in this case that the partnership was "merely a donative agreement to divide the income earned by one member of the family for the benefit of another", as suggested in the government's brief. It is rather a "bona fide partnership to carry on the business and earn the income together", and was established long before it was known that the obligations for income tax were involved.

This partnership is well within the principles outlined and the elements required for bona fide family partnerships in Commissioner v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 and Commissioner v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659.

Other recent cases which, in principle, are similar to this case are: Miller v. Commissioner of Internal Revenue, 6 Cir., 1950, 183 F.2d 246; Ardolina v. Commissioner of Internal Revenue, 3 Cir., 1951 186 F.2d 176; Eckhard v. Commissioner of Internal Revenue, 10 Cir., 1950, 182 F.2d 547; Funia v. Commissioner of Internal Revenue, 4 Cir., 1950, 181 F.2d 890; Greenberger v. Commissioner of Internal Revenue, 7 Cir., 1949, 177 F.2d 990; Johns v. Commissioner of Internal Revenue, 5 Cir., 1950, 180 F.2d 469.

A judgment is awarded the plaintiff.

This opinion will serve as the findings of fact and conclusions of law.