J. JOHN GUDENSCHWAGER AND GLADYS GUDENSCHWAGER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gudenschwager v. Commissioner
Docket No. 11087-77.
United States Tax Court
T.C. Memo 1980-439; 1980 Tax Ct. Memo LEXIS 150; 41 T.C.M. (CCH) 98; T.C.M. (RIA) 80439; September 29, 1980, Filed *150 John C. Shabaz, for the petitioners. Robert E. Dallman, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner, in his statutory notice of deficiency, determined the following deficiencies in petitioners' Federal income tax: Taxable Year
Amount of Deficiency
1972
$ 971.60
1973
2,058.42
The case is before us on respondent's motion for partial summary judgment under Rule 121, Tax Court Rules of Practice and Procedure, which we took under advisement, and the case is also before us, having been submitted following a trial. The issue is whether certain commission paid during the years in issue resulting from Petitioner John Gudenschwager's (hereinafter John) listing and/or sale of real estate were taxable to John or to a family trust which he created. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioners filed joint Federal income tax returns for taxable years 1972 and 1973.At the time their petition in this proceeding was filed, they resided in Wisconsin. *151 On July 15, 1970, John created the J. John Gudenschwager Family Estate (A Trust) (hereinafter the Trust) and transferred to it as corpus his personal residence, certain household furnishings, and a bank account.The declared purpose of the Trust was: to accept the exclusive use of his lifetime services to include all earned remuneration from any outside source and certain personal and real properties from J. John Gudenschwager * * * so that the Gudenschwager Family can maximize their lifetime efforts through the utilization of their constitutional rights; in their pursuit of happiness and their desire to promote the general Welfare. The Trust could act only upon a majority vote of the trustees. The Trust was to continue in existence for 25 years, except that the trustees could, by unanimous vote, terminate and liquidate it at any earlier date in which case its assets were to be distributed to the beneficiaries in proportion to their beneficial interest in the Trust. The trustees were given power to make whatever distribution of the Trust's income and corpus "as in their discretion * * * should be made." The initial trustees were Petitioner Gladys Gudenschwager (hereinafter *152 Gladys) and Mary Taylor. Subsequently John became a trustee, as well as the "manager," of the Trust. Peter Y. Taylor, Jr., Mary Taylor's husband, and Phillip Gudenschwager, John's brother, were also named trustees. Phillip served only temporarily. Apparently, John's son, "Junior," also served as trustee. One-hundred units of beneficial interest represent the entire beneficial interest in the Trust. From the Trust's creation through the years in issue, John and Gladys each owned 50 units. During 1972 and 1973, John was a sales associate with WEB Realty (hereinafter WEB), with respect to which he was an independent contractor rather than an employee. The contractual arrangement was at all times between John and WEB; WEB had no agreement with the Trust regarding John's employment. He obtained listings of property for sale with WEB and sold listed properties on its behalf. In return for his services, WEB paid out by check a portion of the commission which it earned upon the sale of a property which he had listed and/or sold. During 1972, John performed similar services for Leser Realty (hereinafter Leser). During 1972, WEB and Leser made these checks payable to John. *153 At the end of the year, WEB issued a Form 1099 which named him as the payee of $603.13 of commission income; Leser issued a Form W-2 naming him as the payee of $8,361.68 of commission income. During 1973, WEB made the checks payable to the Trust, and at the end of the year issued a Form 1099 naming the Trust as the payee of $14,881.15 of commission income. The checks were made out to the Trust at John's request. Carl Pulley, a real estate broker, owned and directed the operations of, and supervised John's work with, WEB. John's relationship with WEB and Pulley did not change during 1972 and 1973. During 1972 and 1973, the Trust paid certain of petitioners' personal and living expenses, including utility and insurance costs attributable to John's personal residence and repair and fuel costs of an automobile which he used for both personal and business purposes. For 1972 and 1973, the Trust included in its gross income the commissions paid by Leser and WEB, and filed fiduciary income tax returns (Form 1041) for those years with the Internal Revenue Service Center, Kansas City, Missouri. Petitioners included none of these commissions in their gross income for 1972 and 1973; *154 they reported only "management fees" paid by the Trust to John of $2,954.64 and $2,844.63, respectively. Respondent determined that all of the commission payments, and none of the "management fees," were includible in the gross income of petitioners. OPINION The issue is whether the commission payments made by Leser and WEB in connection with John's sales activities were properly includible in petitioners' gross income for 1972 and 1973.Respondent filed a motion for summary judgment which was set for hearing at the same time the case was set for trial. During the hearing on the motion, counsel for respondent orally amended the motion to be one for partial summary judgment which we took under advisement. Respondent conceded that a very narrow question of fact was involved as to part of the commission income. Consequently the case proceeded to trial as to this question of fact. Respondent's motion as orally amended related to the commission income paid during 1972. We have reviewed the record and conclude that no genuine issue of material fact exists with respect to such income. A fundamental principle of Federal income tax law is that income is taxes to the one who earns *155 it. Commissioner v. Culbertson,337 U.S. 733, 739-740 (1949). Arrangements by which income is diverted from its true earner to another entity are not recognized for Federal income tax purposes, even though they may be valid under state law. Lucas v. Earl,281 U.S. 111 (1930). The person or entity who in fact controls the earning of the income, not necessarily the one who ultimately receives it, is properly taxable thereon. American Savings Bank v. Commissioner,56 T.C. 828, 839 (1971). Despite the petitioners' complex legal arrangements involving the Trust, the fact remains that John, and not the Trust, was the one who earned the commissions paid him in 1972. The checks were payable directly to him, and there was no contract between either Leser or WEB and the Trust.John, and not the Trust, controlled the earning of this income and hence was properly taxable thereon. We accordingly grant respondent's motion. A trial was held to determine the earner of the 1973 income. The checks for that year were made payable to the Trust and respondent conceded that there was a material issue of fact as to whether John or the Trust earned *156 them. We again conclude that John was the true earner. These commissions, although paid to the Trust, were nevertheless the fruits of John's sales activities. His relationship with WEB was no different in 1973 than it had been in 1972.He, and not the Trust, was a party to the contractual arrangement. He, and not the Trust, controlled the earning of the 1973 commissions. We therefore hold that all of the commission income at issue here was includible in petitioners' gross income. Other cases arriving at the same conclusion on materially indistinguishable facts are Vercio v. Commissioner,73 T.C. 1246 (1980); Horvat v. Commissioner,T.C. Memo 1977-104, affd. in an unpublished opinion (7th Cir. 1978), cert. denied 440 U.S. 959 (1979); [1]Vnuk v. Commissioner,     F.2d     (8th Cir., Jul. 11, 1980, 46 AFTR 2d 80-5296, 80-2 USTC par. 9575), affg. a Memorandum Opinion of this Court. *157 An Appropriate Order and Decision Will Be Entered. Footnotes
1. Petitioners might note that Horvat v. Commissioner,T.C. Memo 1977-104 affd. in an unpublished opinion (7th Cir. 1978), cert. denied 440 U.S. 959↩ (1979), was affirmed by the court to which an appeal in the instant case would lie.